**MOORE et al. v. THOMAS, Collector of Internal Revenue.**

No. 11074.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1944.

John H. Tucker, Jr., of Shreveport, La., and H. P. Smead, of Longview, Tex., for appellants.

Hilbert P. Zarky, Sewall Key, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and A. W. Christian, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover taxes claimed to have been overpaid for 1936, 1937 and 1938. The claim was that taxpayer had been wrongfully taxed on oil royalties received by him from his lessee, which taxpayer had accounted to his sister for under the terms of two agreements, one dated May 26, 1931,[1] the other a supple-

---

[1] This provided that in view of the execution of the deed of even date, correcting an earlier deed dated April 13th, taxpayer bound himself for a period of 5 years from April 13, 1931, "to ac- count" to his sister, her heirs and assigns, for one-fourth of the net proceeds which may be received by him from the sale of oil, gas and other minerals as well as one-fourth of the net

ment thereto, dated June 23, 1936;[2] that he had therefore received these sums not as his own but as the property of his sister, being only the conduit or agency through which the royalties had been collected for her account.

The defense was a denial that this was so, and a claim that the royalties were, and were received by taxpayer as, his property, and that his accounting to his sister was not an accounting for the royalties received as her property but of payments due her under his personal covenant to pay them.

The facts were stipulated. Those that are material may be stated in short compass. Taxpayer and his sister are the only children of James Moore and wife, who moved to Texas from Indiana about January, 1907, and, thereafter, acquired certain real estate in Texas. Moore died in 1916, leaving a will which is probated in Gregg County, Texas. Under its terms, his widow was given a life interest in all of his property wherever situated. At her death the Indiana property was to go to the daughter, the Texas property to the son. The sister went immediately into full possession of the Indiana property, the taxpayer continued to reside with his mother on the Texas property. In 1931, a controversy arose between taxpayer and his sister relative to the Texas property. As a result of this controversy, several instruments were executed,[3] and pursuant to the terms of the agreements of May 26, 1931 and June 23, 1936, set out in notes 1 and 2, taxpayer paid his sister, in 1936, $7,056.01; in 1937, $19,661.99; in 1938, $39,926.48. These amounts represented, or were equivalent to, one-fourth of the net proceeds taxpayer had received in each

bonuses and rentals which he may receive from such lands, and one-fourth of the net sums which he may realize from royalties under the leases on said lands. The agreement further recited that the consideration recited in the deed represented one-fourth of all sums which the brother had collected up to that time, and further it was stated that the obligation of the brother to his sister was purely personal, constituted no conveyance of any interest whatsoever in the lands or the oil, gas, and other minerals, was in no manner a covenant running with the land, and it should be construed as a contract personal between the parties and having no effect whatsoever on the title to the property conveyed by the sister to the brother. And it further provided that nothing therein should be held to abridge or in any way restrict the right of Moore to sell or dispose of the fee simple title to any part of the lands and that where sales were made of the fee simple title, including both surface and mineral rights, Moore should not be required to pay his sister any part of the consideration. It finally recited that that instrument was executed in lieu of an agreement between the parties of date April 13, 1931, wherein the party of the first part agreed to account to the party of the second part for one-fourth of the net proceeds, that that agreement did not correctly set forth the agreement between the parties and it was thereby cancelled and annulled.

[2] This agreement recited the execution of, ratified and confirmed, the earlier instrument of May 26, 1931, and obligated the taxpayer for a period of two and one-half years from April 13, 1936, to account for and pay over one-fourth of the net proceeds he should receive from, or in connection with, the mineral leases. It finally contained this clause: "It is further understood that the obligation of Clinton Moore to Sarah Smith is purely personal and constitutes no conveyance nor reservation of any interest whatever in the lands or in the oil, gas and other minerals underlying them. It is in no manner a covenant running with the lands, and it shall be construed as a contract personal between the parties, having no effect whatever on the title to the property."

[3] (a) A deed from Sarah Grace Smith, et vir, to her brother, dated April 13, 1931, reciting that in consideration of his conveying to her one-fourth of the minerals under the land, she had sold taxpayer all the interest she "now owns" or might thereafter acquire through her mother to the lands in Texas owned by James Moore. (b) A correction deed dated May 26, 1931, this, reciting the former deed and that it was desired to correct it, declared: (1) That for a consideration of $5,856.88, they had sold to taxpayer all of their interest in the Texas lands; (2) that the recital in the former deed that it was made for and in consideration of taxpayer's conveying to his sister one-fourth of the minerals was in error; and (3) that the said Moore had made no sale of minerals to her, had not intended to do so, and that neither she nor her husband joining in the deed owned or claimed any right, title or interest in and to the oil, gas and other minerals.

year from the oil, gas and other minerals produced from the Texas lands.

Also offered in evidence, in support of the claim that Moore held the royalty in trust for his sister, were a petition filed by her against him in 1939, an agreement for judgment, and a judgment of date Jan. 3, 1940, in which it was provided that Sarah Smith was entitled to receive an undivided one-fourth of all the rents, revenues and royalties due and accruing to Moore for five years from and after Jan. 1, 1940, and that after Jan. 1, 1945, all her right, title and interest should cease. It ratified and confirmed all sales Moore had made. It recited: That she had received from Moore all of the payments that he had agreed to make to her up to January 1, 1940; that it was the intention of the parties to settle finally, fully and completely all issues between them; and that it was, therefore, fully agreed and adjudged that Moore was, and should be, vested with full and complete title to all of the lands save and except her right to receive her one-fourth of the royalties, rents and revenues until January 1, 1945, and these were directed to be paid direct to her.

■ ■ The District Judge was of the opinion: That the correction deed to Moore completely divested Sarah Smith of any interest in the property; that the agreements of May 26, and June 23, set out in the notes herein, left in no doubt that the moneys paid to her by her brother for the tax years in question were paid to her not as her trustee of the oil royalties he had received, but to fulfill personal covenants; and that the royalties received by him had been received as his property. He found that plaintiff was not entitled to recover back any of the income taxes paid on account of royalties received by him, and gave judgment accordingly. We think he was right.

■ ■ ■ The tax years in question, 1936, 1937 and 1938, all precede the agreement and decree made in 1940, and the rights of the parties are to be determined not by what they provide but by the provisions of the deed to Moore and the agreements which preceded them. Based upon these agreements, we think it quite plain that in the tax years in question Sarah Grace Smith had no interest in the minerals in place, none in the royalties paid as such. The cases taxpayer cites, which hold that funds were received by taxpayer not as his own but as trustee for, and a conduit through which the funds were to come to, the true owner, have no application here. The instruments construed and the facts in those cases are wholly unlike those here. Everyone agrees: that earned income must be taxed to him who earns it; and, unearned, that is the fruit of ownership, to him who owns the tree. There is equally uniform agreement that if the taxpayer received royalties, as owner, the fact that he has obligated himself personally to pay a part of the sums received to another will not, of course, affect his tax liability. In each case the question whether an agreement to account for proceeds results in mere personal obligation, or in making the obligor a trustee of the source from which the payment is to come, must be determined upon the facts. In some of the cases, agreements to account have been held to constitute the obligor a trustee for the obligee, and, therefore, to give the beneficiary an equitable interest or title in the funds as soon as received by the obligor. In others, it has been held that the relationship resulting is merely one of personal covenantor and covenantee. No basis for any confusion exists here, for the persons who drew the contracts have not contended themselves with general expressions from which different persons might extract different meanings. They have prevented this by making express and careful provision; that nothing in the instrument should give the sister any title; that the agreement was purely personal; that the ownership was that of the brother; and that under no circumstances or conditions could the sister be held to be owner of land or minerals. In the face of these provisions, it is impossible to hold otherwise than that the taxpayer received the royalties as his own and not as trustee for his sister; and that he accounted to her not for royalties as royalties but for sums owed by him to her, measured by and, therefore, the equivalent of one-fourth thereof. The judgment was right. It is affirmed.